**Gloria STRATTON, Plaintiff,**

v.

**Wendell D. TRAVIS, Individually and in his official capacity as a constable of the Justices of the Peace Courts, and Mary Frances Jarmon, Defendants.**

Superior Court of Delaware,
Sussex County.

Submitted Sept. 16, 1977.

Decided Oct. 5, 1977.

On Rehearing Nov. 14, 1977.

H. William Schab, Jr. of Community Legal Aid Society, Inc., Georgetown, for plaintiff.

Marvin D. Forman, Dept. of Justice, Wilmington, for defendants.

## OPINION

TEASE, Judge.

This case is before the court on plaintiff's motion for summary judgment. All the pertinent facts having been stipulated, the only question presented is whether the statute in question is constitutional.

Plaintiff is a single person and head of her household. In 1975 a judgment was entered against her by a Justice of the Peace. Later, execution was sought on that judgment and a writ of *fi fa* attachment was issued authorizing any constable to levy and execute on the plaintiff's personal property. On October 10, 1975, a constable appeared at the plaintiff's home and levied upon and inventoried the plaintiff's personal property. In accordance with 10 *Del.C.* § 4903 plaintiff was not given any exemption from execution process solely because she resided in Sussex County. Had plaintiff lived in New Castle County or Kent County she would have had property of the value of $200 or $150, respectively, exempted from execution. Plaintiff seeks a declaratory judgment that 10 *Del.C.*, § 4903 is unconstitutional as it applies to Sussex County in that Sussex Countians in her status are being denied the equal protection of the laws, guaranteed by the Fourteenth Amendment to the United States Constitution.

The statute in question, 10 *Del.C.*, § 4903, provides that a certain amount of the personal property of the head of a household shall be exempt from execution or attachment process. This, in and of itself, is not constitutionally offensive. However, the statute sets a different value amount to be exempted in New Castle and Kent Counties and totally removes Sussex County from operation of the statute. It is this trichotomy that is under constitutional attack.

The exemption statutes in effect in America today are rooted in the early English Common Law and based on the humane theory that by allowing the debtor to retain certain property he has an opportunity to be self-supporting and thus will not become a burden on society. *31 Am.Jur.2d*, Exemptions, § 3, pp. 331–332. Delaware's first exemption statutes, which exempted clothing, bedding and tools, predate the American Revolutionary War. Later statutes added the weapons of militia men and ten sheep to the list of exempt property. In 1851 the legislature passed the first comprehensive exemption statute and applied it uniformly throughout the state. Less than a year later the legislature repealed the

statute in Kent County and in 1853 Sussex County suffered the same fate.

In 1873 the legislature repealed all prior exemption statutes and again enacted one of statewide uniformity. This statute, among other things, exempted $200 worth of personal property. In 1879 a bill was passed that lowered Kent County exemptions to $150 and eliminated the exemption in Sussex County. This statute has been passed along, virtually unchanged, to the present day.

The United States Supreme Court has held, in *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274, that in deciding whether a law violates the Equal Protection Clause, the court will look to three things; the character of the classification in question, the individual interests affected by the classification, and the governmental interests asserted in support of the classification. These three tests trigger the much discussed two-tier analysis in equal protection cases.

■ The first tier requires that the court strictly scrutinize any classification based on race, religion, alienage, or any classification affecting fundamental constitutional rights. This strict scrutiny test reverses the presumption of validity and requires the state to show a compelling state interest for establishing the classification.

■ The second tier of the analysis requires only that the classification set up by the state bear a "rational relationship" to the accomplishment of a valid state purpose. In addition, when this analysis is used there is a presumption that the statute is constitutional, thus placing upon the opponent of the legislation the burden of proving its unconstitutionality.

■ In the case at hand the plaintiff has conceded, and there is little doubt, that the strict scrutiny required by the first tier of the analysis is not applicable here. Rather, contrary to plaintiff's argument that a third analysis is required in this case, the rationality test of the second tier of the analysis is appropriate.

■ Under the rational or traditional equal protection analysis, a legislative classification may not be struck down as offensive to equal protection unless it is obviously arbitrary; except in the case of a statute whose discriminations are so patently without reason that no conceivable factual situations could be found to justify them. The party who challenges the statute bears the burden of affirmative demonstration that in the actual state of facts which surround its operation, its classifications lack rationality. *United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782; *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583; *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393.

■ While it is true that one who assails a classification on the ground that it violates the equal protection clause has the burden of proving that the classification in question does not bear a rational relationship to a valid state purpose, the presumption of constitutionality will not penalize the petitioner where the statutory purpose is unclear. Unless the purpose is found within the statute itself or is one of which the court can take judicial notice, the equal protection clause requires more than a mere incantation of a proper state purpose, *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31, thus requiring that the state come forward and identify the state's interest in passing the statute.

In this case the statute does not mention its purpose, the state offers only theories as to its purpose, and the court can conceive of no possible purpose that would justify the classification.

Adopting for purposes of argument the state's theory that the statute may have been enacted to help Sussex Countians obtain loans from lending institutions in Kent and New Castle Counties, the statute must still be declared unconstitutional. While the court does not have the authority to second guess the wisdom of the legislators in 1879, the U.S. Supreme Court has held, in *Nashville, C. & St. L. R. Co. v. Walters,* 294

U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949, that a "statute, valid when enacted, may become invalid by change in the conditions to which it is applied." Today, the citizens of Sussex County no longer need depend on lending institutions outside of Sussex County and thus a statute that may have been designed to facilitate loans to Sussex Countians in this manner is obsolete.

 Therefore, since 10 *Del.C.,* § 4903 bears no rational relationship to any valid state purpose it must be declared unconstitutional in its entirety.

Unfortunately, perhaps, this ruling results in the plaintiff winning the battle and losing the war! Exemptions from execution process having been invalidated in all of Delaware, the humane purposes of such legislation (and, probably, in far greater amounts than have existed heretofore!) require the General Assembly to act promptly in setting a statewide exemption which will withstand constitutional attack. Surely the lesser of the two evils, the complete destitution of a debtor without bed or board—as opposed to a creditor who cannot recover a minor sum of money, is the latter.

I hope counsel for the plaintiff will immediately bring this matter to the attention of the General Assembly.

The motion for summary judgment is granted.

### ON PLAINTIFF'S MOTION FOR REARGUMENT

Plaintiff has filed a motion for reargument, though he was the "successful" party in the litigation, claiming that the recodification of Delaware law in 1973 does not prevent the restoration of the statute in existence prior to that time where a recodified 1973 statute is found to be constitutionally defective. I agree.

My declaration of the unconstitutionality of 10 Del.C. § 4903 herein requires that the exemption statute in effect prior to the enactment of § 4903, found in 14 Del.L., Ch. 562, § 2, is now the law of this State. *State v. Schorr,* Del.Supr., 6 Terry 18, 65 A.2d 810 (1949).

Accordingly, an order providing for a "head-of-household" exemption, under Section 2 of 14 Del.L., Ch. 562, should be presented on notice.