# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
v. ) I.D. No. 2011011781
)
TYRESE BURROUGHS, )
)
Defendant. )

Submitted: March 3, 2022
Decided: April 13, 2022

## MEMORANDUM OPINION

### Upon Review of Defendant's Motion for
### Review of Commissioner's Order - AFFIRMED

Matthew Buckworth, *Deputy Attorney General for the State of Delaware.*

Elliot Margules, Esquire, and Alanna Faber, Esquire, *Attorneys for Defendant Tyrese Burroughs.*

**LeGrow, J.**

The State charged Defendant with possessing of a firearm during the course of a felony and other related charges. After Defendant was detained and presented to the Court of Common Pleas, and following a preliminary hearing with presentation of the State's case, the Superior Court Commissioner[1] imposed bail in the amount of $110,501 cash.

Defendant filed a Motion for Non-Financial Conditions of Release (the "Motion for Non-Financial Conditions") in response to the imposition of monetary bail, but the Commissioner ultimately denied that motion in her September 7th Order (the "Order").

Defendant now asks this Court to review the Order denying his Motion for Non-Financial Conditions (Defendant's "Motion"), which challenged Delaware's bail system[2] as unconstitutional and in violation of his rights to (i) equal protection;

---

[1] While the motions in this case were pending, the presiding Superior Court Commissioner was appointed Judge of the Court of Common Pleas. To maintain continuity of decision making, on May 17, 2021, the Chief Justice of the Delaware Supreme Court issued an Order cross-designating now Judge Mayer as a Commissioner of the Superior Court for the purposes of resolving the pending motions. *See* Comm'r Order at 5 n. 12. For clarity, and given the procedural posture of the case, this Opinion refers to Judge Mayer as "the Commissioner." No disrespect is intended. The Court sincerely appreciates the time Judge Mayer devoted to this case.

[2] Since Defendant filed his Motion, the Delaware Supreme Court has replaced the Interim Special Rule of Criminal Procedure for Pretrial Release with the Special Rule of Criminal Procedure for Pretrial Release. Delaware's General Assembly enacted legislation in 2018 to reform the system under which courts subject defendants to pretrial conditions of release (the "Bail Reform Act"). *See* Comm'r Order at 1. The Bail Reform Act took effect January 1, 2019 and required the judiciary to put in place an interim rule, subject to revision and improvement based on experience using it, data, and feedback. *Id.* On March 1, 2022, the Supreme Court of Delaware announced it was replacing the Interim Special Rule of Criminal Procedure for Pretrial Release with the Special Rule of Criminal Procedure for Pretrial Release, effective April 4, 2022. These rule changes are *ex post facto* in application to this immediate case. But the Court believes even under the Special Rule of

(ii) substantive due process; (iii) procedural due process; and (iv) sufficient sureties. In his Motion seeking review of the Commissioner's Order, Defendant first argues he presented evidence in his Motion for Non-Financial Conditions that he falls within a suspect class and, or in the alternative, was deprived of his fundamental right to liberty because of his pretrial detention. Defendant argues the Court therefore erred in failing to apply the strict scrutiny standard to Delaware's bail statute. Under such standard, Defendant contends, the State had the burden to provide clear and convincing evidence (i) of a compelling interest in Defendant's detention at the assigned monetary bail amount; and (ii) that the detention, according to the bail statute, was narrowly tailored to meet that compelling interest. According to Defendant, the State failed to do so. Next, because Defendant contends a fundamental liberty interest was at issue, additional protections were not afforded to him in violation of procedural due process requirements. Lastly, Defendant alleges his cash bail was not "bail" but an attempt to hold him in detention, a violation of the Delaware Constitution's "sufficient sureties" clause.

---

Criminal Procedure for Pretrial Release, the outcome of this Motion would not change. The parties have not argued otherwise.

I have reviewed the Commissioner's Order, Defendant's Motion, and the State's response.[3] For the reasons set forth below, the Commissioner's Order is **AFFIRMED.**

## FACTUAL & PROCEDURAL BACKGROUND

### A. Defendant's Charges

On November 25, 2020, Defendant Tyrese Burroughs ("Defendant") was arrested and charged with Possession of Firearm During Commission of a Felony, Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, two counts of Possession of a Controlled Substance with Intent to Deliver, Carrying a Concealed Deadly Weapon, and Possession of Marijuana.[4] According to the affidavit of probable cause included in the warrant for Defendant's arrest, an officer on patrol observed Defendant engaging in what the officer believed was an illegal hand-to-hand drug transaction.[5] After witnessing the exchange, the officer approached Defendant, but Defendant fled the scene.[6] The officer then pursued Defendant on foot and verbally commanded Defendant to stop, but Defendant continued to run.[7] Eventually, Defendant fell, and the officer detained

---

[3] I asked the State to submit supplemental briefing explaining its position on whether Delaware's bail statute could meet the strict scrutiny standard if the Court applied that standard, since that argument previously was not addressed by the State. *See* D.I. 66.

[4] Comm'r Order at 3; D.I. 14, State's Resp. to Def's Mot. for Non-Financial Cond. of Release (hereinafter, "State's Resp.") at 4.

[5] Comm'r Order at 4.

[6] *Id.*

[7] *Id.*

3

him with the assistance of additional officers who had arrived on the scene.[8] During the struggle to detain Defendant, the patrol officer felt a large bulge on the right side of Defendant's waistband, consistent with the shape of a firearm.[9] Defendant was advised of his *Miranda* rights and taken into custody.[10]

## B. Defendant's Preliminary Hearings

Defendant's case was scheduled for a preliminary hearing in the Court of Common Pleas on November 30, 2020.[11] The hearing was continued to December 14, 2020, and then again to December 21, 2020.[12] At that time, the Court found probable cause for the charges, and the case was bound over to the Superior Court for trial.[13] Defendant filed his Motion for Non-Financial Conditions after the case was transferred to the Superior Court, and the first hearing in that Court was held on

---

[8] *Id.*

[9] *Id.* During the pat down, a loaded, silver Smith and Wesson Walther .380 with seven live rounds in the magazine was confiscated. *Id.* Defendant revealed he had drugs on his person. *Id.* At the scene, officers seized fifty-eight bags of suspected heroin and a bag of crack cocaine with a weight of 1.5 grams. *Id.* Upon transportation to the station, officers located 3.3 grams of marijuana within Defendant's personal effects. *Id.*

[10] Defendant filed a Motion to Suppress on December 22, 2021, arguing for the suppression of evidence seized due to (1) lack of reasonable suspicion for the hand-to-hand exchange and (2) lack of evidence regarding waiver of Defendant's *Miranda* rights. D.I. 63. That motion remains pending.

[11] Comm'r Order at 5.

[12] *Id.* Defendant did not object to the continuances. During Defendant's initial appearance before the Court of Common Pleas, the court reduced his bail to $20,000 cash, $14,501 secured, pre-trial supervision, and home confinement or GPS monitoring. Comm'r Order at 5. But after conducting the preliminary hearing and considering the State's case as well as argument from Defendant, the Court of Common Pleas reset bail at the original amount of $110,501 cash. *Id.*

[13] *Id.*

4

January 5, 2021.[14]  During the first hearing addressing bail, Defendant asked the Court to consider for purposes of setting bail his young age, high school graduation status, self-employment at the time of arrest, lack of recorded failure to appear, and successful completion of probation for a prior drug dealing conviction.[15]  The State responded to this argument by informing the Court the current charges were Defendant's third set of drug dealing charges, his most recent conviction was in 2019, and his previous conviction involved a violent felony, making him a "person prohibited" from possessing a firearm.[16]  The State also contended it had strong evidence in support of a conviction and believed Defendant's escalating actions raised a serious concern for the community's safety.[17]

## C. The Court Denies Defendant's Motion for Non-Financial Conditions

A second bail hearing separately was held on July 8, 2021, to address the constitutional issues raised by Defendant.[18]  During that hearing, Defendant presented expert testimony in support of his constitutional claims against the State.

---

[14] *Id.* On January 5, 2021, the Court heard argument on the Motion for Non-Financial Conditions, but it was agreed the constitutional arguments would be preserved for further briefing. *Id.* at n. 12.

[15] *Id.* at 6.

[16] *Id.*

[17] *Id.* The State contended Defendant's failure to comply with the firearm prohibition, coupled with his now several weighty charges, caused great concern for the community's safety. *Id.*

[18] D.I. 61. The second hearing was held to allow presentation of expert testimony and oral argument on Defendant's pending Motion for Non-Financial Conditions. After reviewing expert testimony, cross-examination, subsequent questioning of counsel, closing arguments, and all prior motions, responses and briefing provided by counsel, the Court determined no further briefing on the issues was needed or required. *See* D.I. 40.

On September 7, 2021, the Commissioner issued her Opinion denying Defendant's Motion for Non-Financial Conditions.[19] On September 30, 2021, Defendant filed this Motion for Review of Commissioner's Order.[20]

### D. Review of Delaware's Bail Statute

Because Defendant's claims involve Delaware's bail system, a brief overview of the applicable law and practice is necessary. Under Delaware law, except for certain capital offenses, *all* citizens are entitled to bail upon "sufficient sureties."[21] In determining whether (i) the defendant is likely to appear as required and (ii) there will be no substantial risk to the safety of the community, Delaware courts consider a range of factors when setting bail. Specifically, the courts

> "...take into consideration the nature and circumstances of the crime charged, whether a firearm was used or possessed, the possibility of statutory mandatory imprisonment, whether the crime was committed against a victim with intent to hinder prosecution, the family ties of the defendant, the defendant's employment, financial resources, character and mental condition, the length of residence in the community, record of convictions, habitual offender eligibility, custody status at time of offense, history of amenability to lesser sanctions, history of breach of release, record of appearances at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings."[22]

---

[19] D.I. 57. According to the Court, Defendant's Motion for Non-Financial Conditions was denied because the Defendant had not established that his right to equal protection was violated, nor that he was deprived of his right to substantive and procedural due process. *Id.*

[20] D.I. 60.

[21] DEL CONST. art. I, § 12 (emphasis added). The language specifically reads: "All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is positive or the presumption great; and when persons are confined on accusation for such offenses their friends and counsel may at proper seasons have access to them." *See also State v. Starling*, 2016 WL 6901337, at *1 (Del. Super. Ct. Nov. 22, 2016).

[22] 11 *Del. C.* § 2105.

At the time the Commissioner set and reviewed Defendant's bail, Delaware had adopted the Interim Special Rule 5.2 of Criminal Procedure for Pretrial Release ("Interim Rule 5.2").[23] Interim Rule 5.2 allowed offenders to be released without monetary conditions.[24] Exceptions, however, exist. For example, an offender should not be released without monetary conditions if the individual is a risk to public safety.[25] Certain identified "signal offenses" recognize potential risk to public safety. If a defendant is charged with a signal offense, a court may exercise its discretion, after consideration of the entire record, and require conditions of release bond necessary to reasonably assure protection of public safety.[26] Defendant in this case was charged with a signal offense.[27]

Additionally, when setting bail conditions, the Court shall consider a defendant's financial circumstances, provided reliable evidence exists, and require the State make a special showing that releasing the defendant with less intensive

---

[23] *See Judiciary Adopts Interim Rule for Implementation of Fundamental Bail Reform,* For Immediate Release, (Dec. 17, 2018), https://courts.delaware.gov/forms/download.aspx?id=109158.

[24] *See* Interim Rule 5.2, *Definitions* "Unsecured conditions of release bond."

[25] Interim Rule 5.2(h) "Conditions of release for risk to public safety." (The Court "shall consider that the most serious threats to be addressed by conditions of release are when the defendant poses a risk of harm to the general public or a specific person.")

[26] Interim Rule 5.2(h)(2)(B). *See also* Schedule 5.2B. The Court shall "consistent with the current SENTAC guidelines [referring to the SENTAC, Delaware Sentencing Accountability Commission Benchbook 2018] set an amount that is substantial enough to sufficiently: (i) deter the defendant from harming the public or a specific person; or (ii) ensure that the surety will supervise the defendant intensely enough to reasonably assure public safety." *Id.*

[27] Comm'r Order at 12. *See also* Schedule 5.2B. Defendant is a "person prohibited" from firearm use due to previous convictions, but the new charges included several firearm charges. *Id.*

conditions of release would pose substantial danger to public safety.[28] The Court then makes special findings supporting its conclusion.[29] But, when a defendant is charged with a violent felony, including possession of a firearm by a person prohibited, there is a presumption the court will set a cash-only financial condition of release bond.[30] Citing the State's evidence supporting Defendant's possession of a firearm and drugs as a person prohibited, the Court in this case found $110,501 cash bail and pretrial supervision was appropriate.[31] Defendant contends this decision violated his constitutional rights.

## ANALYSIS

In support of his exceptions to the Commissioner's Order, Defendant primarily argues the Court failed to ascertain whether the State established, by clear and convincing evidence, that it has a compelling interest served by setting monetary bail at the amount set in his case.[32] Defendant contends the Court should have, but

---

[28] Interim Rule 5.2.(l); Interim Rule 5.2.(h)(3).

[29] Interim Rule 5.2.(h)(3).

[30] 11 *Del. C.* 2107(c). "[F]or a defendant charged with committing…Possession of a firearm by persons prohibited … the presumption is that the court will set conditions of release bond guaranteed by financial terms in an amount **within or above** the guidelines published by the Delaware Sentencing Accountability Commission ("SENTAC") for that offense and secured by cash only." (emphasis added). The statute continues, "[i]n any case where a court sets bail pursuant to the presumption within subsection (c) of this section, a court of competent jurisdiction may, consistent with Chapter 21 of this title and court rules, review bail to consider whether bail in a different amount or with a different security is appropriate to reasonable ensure the reappearance of the defendant, compliance with the conditions set forth in the bond, and the safety of the community." 11. *Del C.* 2107(d).

[31] Comm'r Order at 50.

[32] *Id.* at 2. Specifically, Defendant argues he (1) falls within a suspect class, and (2) was deprived of a fundamental right to liberty, both of which demand strict scrutiny application. *Id.* The Strict

8

did not, apply strict scrutiny to Delaware's bail statute, and therefore failed to find that, absent a compelling governmental interest, any infringement on Defendant's basic right to liberty violated his right to equal protection and substantive due process.[33]

In an appeal from a Commissioner's order, this Court reviews questions of law *de novo* and reviews questions of fact under the "substantial evidence standard."[34] Equal protection, due process, and other constitutional issues presented in this case are questions of law, so the Court has reviewed the Order *de novo*.

**I.    The Commissioner correctly determined Defendant's constitutional right of equal protection under the law was not violated by the decision to set monetary bail.**

The guarantee of equal protection under the Fifth Amendment, as applied to the states by incorporation through the Fourteenth Amendment, is a right to be free from "invidious discrimination in statutory classifications and other governmental activity."[35] The Fifth Amendment itself contains no equal protection clause, but its "Due Process Clause prohibits the … [g]overnment from engaging in discrimination that is 'so unjustifiable as to be violative of due process.'"[36] As a consequence,

---

Scrutiny standard requires a court find the statute be narrowly tailored to address that compelling government interest. *See, e.g., Stratton v. Travis*, 380 A.2d 985, 987 (Del. Super. Ct. 1977).

[33] Comm'r Order at 15.

[34] *State v. Lewis*, 2020 WL 6557085, at *2 (Del. Super. Ct. 2020) (citing *Rittenour v. Astropower, Inc.*, 2005 WL 4051539, at * 1 (Del. Super. Ct. Dec. 29, 2005)).

[35] *Harris v. McRae*, 488 U.S. 297, 322 (1980).

[36] *Schlesinger v. Ballard*, 419 U.S. 498, 500 n. 3 (1975) (quoting *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)).

courts have construed the Fifth Amendment to contain an equal protection guarantee.[37]

The equal protection analysis begins with a determination of whether the allegedly discriminatory statute involves a suspect class.[38] If no suspect class is present, the equal protection claim is analyzed under a rational basis standard of review. Rational basis review is highly deferential, and requires Defendant, rather than the government, to demonstrate no reasonably conceivable state of facts could provide a rational basis for the classification.[39]

### A. The Commissioner correctly held Defendant does not belong to a suspect class.

Defendant argues he falls within a suspect class due to an absolute deprivation of liberty *based on his access to money*, which should heighten the Court's standard of

---

[37] *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 316 (3d Cir. 2001) ("Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment.") (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995) (citations omitted)).

[38] The Commissioner addressed Defendant's equal protection and substantive due process claims together because "…various courts reviewing similar issues have consistently intertwined the equal protection and substantive due process principles." Comm'r Order at 14 n. 30. For clarity, my analysis separates the two claims. *See Maher v. Roe*, 432 U.S. 464, 470 (1977). ("We must decide first, whether (state legislation) operates to the disadvantage of some suspect class **or** impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny…) (emphasis added). Consideration of whether Defendant was deprived a fundamental right is addressed below.

[39] *Stratton v. Travis*, 380 A.2d 985, 987 (Del. Super. Ct. Oct. 5, 1977). *See also Heller v. Doe*, 509 U.S. 312, 320-21 (1993). An "intermediate scrutiny" standard exists for those groups considered "quasi-suspect," such as gender, which is not applicable in this case. *Turnbull v. Fink*, 668 A.2d 1370, 1379 (Del. 1995).

10

review from rational basis to strict scrutiny.[40] Strict scrutiny review reverses the presumption of statutory validity and requires the State, rather than Defendant, to show a compelling interest for establishing the classification.[41] It follows, Defendant contends, (i) absent a compelling governmental interest, and (ii) means narrowly tailored to achieve such interest, Defendant's equal protection claim succeeds.

Inherently suspect classifications include race, color, religion, or ancestry.[42] The Supreme Court of the United States repeatedly has held that poverty, standing alone, is not a suspect classification.[43] The Delaware Supreme Court similarly has held economic classifications do not implicate suspect classification.[44] And Defendant himself agrees poverty is not a suspect classification.[45] Because indigency is not a

---

[40] Comm'r Order at 15; Mot. at 3. The Defendant disagrees with the Order's recitation of his argument – contending he agrees that money-based discrimination is *not* a suspect classification. *See* Mot. at 3. Defendant's Motion clarifies that an absolute *deprivation of liberty based on access to money* will trigger strict scrutiny, which should have been applied to his case. It appears Defendant is blending, as many analyses do, his equal protection and substantive due process arguments together rather than isolating a "suspect class" analysis from a "fundamental right" analysis. For clarity's sake, I will keep the two separated.

[41] *Stratton v. Travis*, 380 A.2d 985, 987 (Del. Super. Ct. 1977).

[42] *Turnbull v. Fink*, 668 A.2d 1370, 1379-80 (Del. 1995).

[43] *Harris v. McRae*, 448 U.S. 297, 323 (1980) (citing, for example, *James v. Valtierra*, 402 U.S. 137 (1971)). *See also Maher v. Roe*, 432 U.S. 464, 471 (1977) ("[T]his Court has never held that financial need alone identifies a suspect class for purposes of equal protection analysis."); *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 20 (1973) ("The payment requirements in [previous indigent] case[s] were found to occasion de facto discrimination against those who, because of their indigency were totally unable to pay [for a desired benefit].") The Court in *Rodriguez* held there was "no basis on the record in [the] case for assuming that the poorest people – defined by reference to any level of absolute impecunity – [were] concentrated in the poorest districts." *Id.* at 22. Likewise, there is no evidence for assuming that the poorest people get the highest amount of bail imposed upon them.

[44] *See Fink*, 668 A.2d at 1379. This case did not involve Delaware's bail statute but nevertheless supports the proposition that economic classification does not implicate a suspect class.

[45] Mot. at 3.

protected suspect class under equal protection, strict scrutiny does not apply to Defendant's equal protection claim.[46] Cases where courts have struck down criminal penalties as unconstitutional under equal protection involved indigents who were incarcerated "simply *because of* their inability to pay a fine."[47] No court has held that fines must be structured to reflect each defendant's ability to pay in order to avoid disproportionate burdens.[48] The equal protection clause "at least where wealth is involved…does not require absolute equality or precisely equal advantages."[49] Because Defendant is not part of a suspect class, strict scrutiny does not apply to his equal protection claim. The equal protection claim therefore appropriately is analyzed under a rational basis theory.

---

[46] *See. e.g., Abdul-Akbar* 239 F.3d at 317 ("Neither prisoners nor indigents are suspect classes.") *See also San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973) ("The system of alleged discrimination and the class it defines have none of the traditional indicia of suspectness: the class is not saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.") Under an Equal Protection analysis, if no suspect class is found, the legislative scheme will be examined to "determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination." *Maher v. Roe*, 432 U.S. 464, 470 (1977) (applying the rational basis standard of review if no suspect class or fundamental right explicitly or implicitly operated by the state legislation).
[47] *Rodriguez*, 411 U.S. at 21-22 ("Again, the disadvantaged class was composed only of persons who were totally unable to pay the demanded sum.")
[48] *Id.* at 22 ("Sentencing judges may, and often do, consider the defendant's ability to pay, but in such circumstances they are guided by sound judicial discretion rather than by constitutional mandate.")
[49] *Id.* at 24.

### B. Delaware's bail statute meets the rational basis standard.

Under rational basis review, a statute's classification need only bear a "rational relationship" to the accomplishment of a valid state purpose; if one exists, the statute is presumed constitutional, placing upon the defendant the burden of proving its unconstitutionality.[50]

Delaware's bail statute, as applied to Defendant, is rationally related to ensuring public safety, which is not only a *valid* state purpose, but a compelling one.[51] Removing an ease of release by imposing a high monetary bail rationally relates to protecting the public from violent offenders. Because Delaware's bail statute meets the rational basis level of scrutiny, Defendant's equal protection claims therefore must be denied. For these reasons, the Commissioner's decision that Defendant's equal protection rights were not violated is affirmed.

### II. The Commissioner correctly determined Defendant's substantive due process rights were not violated by the Court setting monetary bail.

The Due Process Clause protects individuals against government actions that (i) "shock[] the conscience," or (ii) "interfere[] with rights implicit in the concept of

---

[50] *Travis*, 380 A.2d at 987. *See also Harold v. Richards*, 334 F.Supp.3d 635, 642 (E.D. Pa 2018) ("A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification.")

[51] Defendant contends regardless of whether strict or rational basis scrutiny applies, the State cannot claim an interest in guaranteeing defendants appearances or in eliminating lawbreaking. This is simply untrue. Public safety is a compelling governmental interest, described in further detail below. *See infra* n. 63 (*United States v. Salerno*, 481 U.S. 739, 748 (1987)).

13

ordered liberty."[52] A substantive due process analysis starts with considering the type of right infringed upon.[53] The appropriate standard of review hinges on that classification.[54]

### A. The Court will assume, for purposes of the instant case, Defendant's detention implicates a fundamental right.

Fundamental rights are those found explicitly or implicitly in the Constitution, such as life, liberty, and property.[55] If a state regulation affects a fundamental right, like one that affects a suspect class, the court will analyze the statute under a strict scrutiny standard.[56] If, however, the right violated is non-fundamental, the Court applies rational basis review.[57] Applying monetary bail above the amount a defendant can afford requires they remain in detention. A Court may consider a defendant's financial circumstances, but still set bail outside those means upon clear and convincing evidence that no less restrictive alternative will satisfy the

---

[52] *Salerno*, 481 U.S. at 747 (citing *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937)).
[53] *Travis*, 380 A.2d at 987.
[54] *Id.*
[55] *Rodriguez*, 411 U.S. at 17. Explicit and implicit fundamental rights also are referred to as enumerated and unenumerated rights. Enumerated fundamental rights are those "within a specific prohibition of the Constitution, such as those of the first ten amendments, which are deemed equally specific when held to be embraced within the Fourteenth." *United States v. Carolene Products Co.* 304 U.S. 144 n. 4. (1938). Unenumerated fundamental rights are those the Supreme Court has labeled as "fundamental," and include marriage, privacy, contraception, procreation, custody and care of one's children, interstate travel and voting. *See in order of topic, Loving v. Virginia*, 388 U.S. 1 (1967); *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Skinner v. Oklahoma*, 316 U.S. 535 (1942); *Santosky v. Kramer*, 455 U.S. 745 (1982); *Shapiro v. Thompson*, 394 U.S. 618 (1969); and *Harper v. Virginia Bd. of Elections*, 383 U.S. 663 (1966).
[56] *Travis*, 380 A.2d at 987.
[57] *Id.*

government's purpose.[58] For purposes of this case alone, I will assume the attachment of an unaffordable bail that results in detention implicates a defendant's fundamental right of liberty, triggering a strict scrutiny standard of review of Delaware's bail statute.[59]

### B. Under a strict scrutiny standard, the State has met its burden, and Defendant's constitutional claim fails.

Monetary bail can ensure a defendant appears in court, but it also can protect the public at large. A statute is permissible if it allows a court setting bail to consider the danger a person may pose to others if released.[60] The Supreme Court has "repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest."[61] That is because the government's interest in preventing crime by arrestees is "both legitimate and compelling."[62] Although general interest in preventing crime is

---

[58] For example, the Supreme Court of the United States has held the Bail Reform Act of 1984 constitutional even though it allows a federal court to detain an arrestee pending trial if the Government demonstrates by clear and convincing evidence, after an adversary hearing, that no release condition "will reasonably assure … the safety of … the community." *United States v. Salerno*, 481 U.S. 739, 741 (1987).

[59] A fundamental right may be assumed in this case because, even under a strict scrutiny analysis, the State's burden was met, and the Commissioner's ruling is affirmed. I leave the discussion of whether unaffordable bail implicates a fundamental right by law for another day. *See* Mot. at 3 (arguing that the *Bearden* line of cases hold there is a fundamental right not only to liberty but to be able to afford liberty).

[60] *Salerno*, 481 U.S. at 742, 755.

[61] *Id.* at 748 ("…[A]s our cases hold, this [strong interest in liberty] may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society.") *Id.* at 750-51.

[62] *Id.*

compelling, such an interest is heightened when the State presents evidence the arrestee, already held to answer "for a serious crime, presents a demonstratable danger to the community."[63] This is such a case.

### C. Delaware's bail statute provides the least restrictive means to achieve the government's compelling interest in protecting the public.

Here, the State presented clear and convincing evidence, as required by Delaware's bail statute, that no less restrictive alternative other than the cash bail assigned to Defendant would satisfy the government's compelling interest in protecting the public. Delaware's bail statute presumptively requires release of all defendants pending trial, unless a defendant is charged with a signal offense.[64] And even after overcoming this presumption, since Defendant was charged with a signal offense, the State and the Court had to meet additional requirements identified by Interim Rule 5.2. The bail statute therefore is narrowly tailored to achieve the State's compelling interest in protecting the public.

---

[63] *Id.* at 749. The Supreme Court went on to hold "[u]nder these narrow circumstances, society's interest in crime prevention is at its greatest." *Id.*

[64] Further, if the State makes a special showing that the defendant poses a risk of flight or to the community and the Court makes a special finding as to the same, or the Court *sua sponte* makes a special finding, the presumption in support of releasing defendants pending trial no longer controls. *See* Interim Rule 5.2.

**D. The State presented evidence that Defendant ignored his "Person Prohibited" classification and possessed a firearm while in the community.**

Defendant's charges are his third set of drug dealing charges, his most recent conviction was in 2019, and those previous charges included some classified as violent felonies.[65] His current charges include a signal offense. As the State pointed out, and as the Commissioner emphasized, the State's testimony at the preliminary hearing provided strong probable cause evidence.[66] Most significantly, when Defendant committed the alleged offenses, the State demonstrated he already was classified as a "Person Prohibited" from possession of a firearm, but that he nonetheless carried a firearm while in public in direct violation of the law. This is a case in which setting a significant monetary bail, in accord with SENTAC guidelines,[67] satisfies a compelling government interest of public safety and is narrowly tailored to achieve that interest. Defendant demonstrated a disregard of Delaware law and this Court's instructions by carrying a firearm. As the Supreme Court has held, "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may

---

[65] Comm'r Order at 6. The State also makes a convincing argument that Defendant's behavior is escalating as the charges before the current ones did not involve a firearm, whereas the charges in this case did. Bail Mot. Tr. Jan. 5, 2021, at 5:12-15.

[66] *Id.*

[67] Defendant's monetary bail was within the SENTAC guidelines, although it reflects the maximum amount permitted.

disable the arrestee from executing that threat."[68] No other means exist that would be less restrictive to ensure Defendant does not possess another firearm while in public other than setting a high monetary bail.[69] The Commissioner's ruling on Defendant's substantive due process claims therefore is affirmed.

### III. The Commissioner correctly determined Defendant's procedural due process rights were not violated by the Court setting monetary bail.

When government action deprives an individual of a fundamental right but survives substantive due process scrutiny, that action still must be implemented in a fair manner, meaning it must satisfy "procedural" due process.[70] To afford a defendant their procedural due process rights, some course of action must be in place to allow the defendant a chance "to be heard."[71] Notice to the defendant and a hearing in front of a neutral-decision maker are examples of such rights. The Court followed Superior Court Criminal Rule 5 in setting Defendant's monetary bail.[72] Under that Rule, a defendant must be informed of the complaint and any probable cause affidavit against them.[73] The defendant has a right to counsel with reasonable

---

[68] *Salerno*, 481 U.S. at 751.

[69] The Defendant already was prohibited by law from possessing a firearm, but nonetheless was arrested with one allegedly in his possession. Non-monetary conditions alone therefore were unlikely to deter him from doing so again. In contrast, the threat of forfeiting a high cash bail was the only tool available to the Commissioner to achieve the State's compelling interest in preventing such conduct.

[70] *Salerno*, 481 U.S. at 747.

[71] *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).

[72] The Rule states, "Initial appearance shall be before a magistrate without unreasonable delay."

[73] Super. Ct. Crim. R. 5.

time and opportunity to consult with them.[74] Additionally, during a preliminary hearing, if the defendant is in custody, probable cause must exist to believe the defendant committed the offense, and the defendant may introduce evidence on their own or cross-examine the State's witnesses.[75]

In summary, Defendant was represented by competent counsel, his proceedings took place in open court before a neutral decision-maker, and he was provided notice of the charges. The Commissioner's decision to deny his procedural due process claims is, therefore, affirmed.

## IV. The Commissioner correctly determined Defendant's monetary bail did not violate the "sufficient sureties" clause in Delaware's Constitution.

Defendant challenges the State's justification for his monetary bail as a violation of the Delaware Constitution's guarantee that all defendants shall be bailable upon sufficient sureties. Defendant contends his bail is not operating as a "bail" but as an attempt to hold him without an opportunity for release.[76] But Defendant's bail was set in accordance with the criteria the Court was required to consider.[77] In Delaware, monetary bail should be set at an amount that considers risk of flight and ensures

---

[74] *Id.*

[75] Rule 5(d); Rule 5.1(a). If a felony charge is included, another bail hearing is held before the Superior Court again and the Court reviews a pre-trial risk assessment, the bail reform act, applicable statutes, and the severity of charges bail guidelines with other factors. Comm'r at 50.

[76] Mot. at 30.

[77] *See. e.g., State v. Perkins*, 2004 WL 1172894, at *1 (Del. Super. Ct. May 21, 2004). "The General Assembly has codified certain criteria the Court should consider when setting the amount of bail and establishing conditions for release."

public safety. If the State admitted its only interest for setting bail was in preventing Defendant's flight, the bail would need to be set at a sum designed to ensure that goal, and no more.[78] But here, the Court properly was concerned with the public's safety if Defendant were to be released. To reiterate, Defendant, was classified as a "Person Prohibited" from possessing a firearm, and the State nevertheless presented evidence he carried one on his person when arrested. The bail imposed fell within the SENTAC guidelines and met the requirements of Delaware's constitutional bail statute. The Order correctly denied Defendant's sufficient sureties claims.

## V. Defendant's presentation of expert analysis and testimony, while appreciated, does not change this Court's conclusions.

Defendant's arguments do not fail for lack of research or effort. During the course of litigating Defendants' motions, Defendant's counsel presented expert analysis by Professor Jennifer Copp, a statistician and criminologist with specific expertise in pretrial release mechanisms and risk assessments. Her research suggests Delaware may need to reevaluate provisions in its bail statute. Even so, the State provided clear and convincing evidence under the current bail statute that the cash bail imposed upon Defendant was narrowly tailored to serve a compelling

---

[78] *Salerno*, 481 U.S. at 753. The Court goes on to hold, "We believe that when Congress has mandated detention on the basis of a compelling interest other than prevention of flight... the Eighth Amendment does not require release on bail." *Id*. at 754.

government interest. Although the expert testimony did not ultimately "carry the day," the Court appreciates the diligence of all counsel in advocating their positions.

## CONCLUSION

For the reasons stated above, the Order of the Commissioner is **AFFIRMED.** Consistent with the Order, I find the State established by clear and convincing evidence that Delaware's bail statute is narrowly tailored to achieve a compelling purpose. Defendant's claims were, therefore, correctly denied.

**IT IS SO ORDERED.**

_____

Abigail M. LeGrow, Judge